UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| YOLANDA THOMAS, | ) No. CV 06-3364 SH |
| Plaintiff, | ) MEMORANDUM DECISION |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## I. PROCEEDINGS

Plaintiff filed a Complaint on June 2, 2006, seeking review of the decision by the Commissioner of the Social Security Administration denying Disability Insurance Benefits for lack of disability. On June 16, 2006, both parties consented to proceed before United States Magistrate Judge Stephen J. Hillman, after which defendant filed an answer on October 6, 2006. The parties thereafter filed a joint stipulation on April 10, 2007. The matter has been taken under submission.

## II. BACKGROUND

Plaintiff filed an application for Disability Insurance Benefits on September 22, 2003 alleging an inability to work. AR 14. The application was denied by the State Disability Determination Service, and a request for a hearing was timely filed. AR 14. On August 3, 2004 and October 5, 2005, plaintiff appeared and testified at a hearing before an Administrative Law Judge ("ALJ"). AR 14.

Following the hearing, plaintiff's claim was denied again. AR 26. The ALJ concluded that the plaintiff was not disabled at any time through December 20, 2005, and that her residual functional capacity allows her to complete work which exists in significant numbers in the national economy. AR 26. The ALJ also concluded that the plaintiff's allegations regarding her limitations were not totally credible based on a number of factors, discussed below. AR 23.

Following the ALJ's determination, the plaintiff filed a Complaint, which challenges the ALJ's determination on two issues. Plaintiff alleges that the ALJ erred (1) by improperly rejecting the opinion of plaintiff's treating physician; and (2) by improperly considering plaintiff's credibility in rejecting her subjective complaints.

For the reasons discussed below, the Court finds that neither of plaintiff's claims of error have merit.

## III. DISCUSSION

Issue 1:

The first issue raised is whether or not the Administrative Law Judge (ALJ) properly considered the testimony of the plaintiff's treating physician in formulating the Residual Functional Capacity (RFC) used. Plaintiff argues that the record taken as a whole would support a more restrictive RFC than found by the ALJ. The legal question here is whether the decision of the ALJ to use a less restrictive RFC than provided by plaintiff's treating physician is supported by

1  legally sufficient reasons.

2  Where there is a conflict between the opinion of a treating physician and an examining physician, an ALJ may reject a treating physician's opinion if he sets out a detailed and thorough summary of the facts and conflicting evidence, states his interpretation thereof, and makes findings setting forth specific, legitimate reasons for doing so. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). However, where a non-treating physician's opinion is based upon independent, clinical findings, which differ from those of the treating physician, it may be viewed as substantial evidence in its own right. Id. Also, the opinions of non-examining, testifying medical experts may serve as substantial evidence when supported by, and consistent with other evidence in the record. Morgan v. Commissioner of the SSA, 169 F.3d 595, 600 (9th Cir. 1999). Regardless of the source, all acceptable medical evidence must be supported by clinical and laboratory findings. See Meanel v. Apfel, 172 F.3d 1111, 1113-14 (9th Cir. 1999).

In the case at bar, Dr. Schwarz is clearly the plaintiff's treating physician, having seen her quite consistently over a period of years. As such, the ALJ needed to cite legitimate and specific reasons for rejecting his testimony. Plaintiff argues that while the ALJ's reasons may be specific, they are "far from legitimate." Plaintiff continues, arguing that the (1) ALJ has no evidence to support the claims that Dr. Schwarz was part of plaintiff's "litigation support team" and (2) that he was "hand picked" by plaintiff's attorney, and also that (3) Dr. Schwarz' medical reports should have significance outside of the workers' compensation case. However, even if the defendant stipulated to all of these points, it is the opinion of this Court that the ALJ still cited sufficient specific and legitimate reasons for rejecting Dr. Schwarz' testimony.

Indeed, in the same footnote containing the allegedly illegitimate reasons listed above, the ALJ preceded them with arguably the most important reason: Dr. Schwarz' testimony is not supported by the objective medical record and findings.

1   AR 22, fn. 1. First, the ALJ notes that Dr. Schwarz' testimony is inconsistent with
2   the opinions of Dr. Berman, the agreed medical examiner in the workman's
3   compensation case. AR 19-23. Since Dr. Berman was a non-treating physician who
4   based his opinion on independent clinical findings (his own examination of the
5   plaintiff), his testimony is substantial evidence on its own under <u>Magallanes</u>.
6   Under that analysis, the ALJ met his burden, and was free to weigh Dr. Berman's
7   testimony more heavily without any further explanation.

8   Furthermore, Dr. Gurvey, the medical expert at the hearing, also disagreed
9   with the conclusions drawn by Dr. Schwarz. Since Dr. Gurvey based his opinions
10  on the medical evidence presented by Dr. Berman's report, and since his opinion
11  was consistent with that report, his testimony also represents substantial evidence
12  under <u>Morgan</u>; this too satisfied the ALJ's burden.

13  The ALJ went on to explain that he was crediting the testimony of Drs.
14  Berman and Gurvey in his decision over the opinion of Dr. Schwarz. AR 19, 22-
15  23. The aforementioned reasons alone constituted "specific and legitimate" reasons
16  for rejecting the opinions of Dr. Schwarz, but they were not the only reasons the
17  ALJ provided. <u>See</u> <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001).

18  The ALJ also explains that he rejected Dr. Schwarz' opinion because it is
19  contradicted by most of Schwarz' own reports. AR 19, 22, fn. 1. The ALJ
20  elaborated further on these inconsistencies earlier in the opinion, explaining, "On
21  April 13, 2004, Dr. Schwarz completed a RFC questionnaire stating that the
22  claimant has carpal tunnel syndrome (despite normal NCV and EMG testing), . . .
23  tenosynovitis, right thumb (despite noting previously that this had resolved.) . . .
24  He opined that the claimant was limited . . . [in] reaching (he does not explain why
25  the claimant would be limited in her reaching)." AR 19 (parentheses in original).

26  Also, Dr. Schwarz had previously examined the plaintiff on December 3,
27  2002, diagnosing carpal tunnel syndrome, tenosynovitis, and lumbosacral spine
28  disc bulges L4-5 and L5-S1, despite negative NCV and EMG testing, negative

- 4 -

1   Tinel's sign and Phalen's test, and a normal X-ray of the lumbosacral spine. AR
2   18. Finally, Dr. Schwarz also had inconsistencies between his opinion on
3   September and October of 2001 and December of 2003. AR 328, 335, 564. In
4   2001, after a <u>positive</u> Phalen's test on the right wrist and a <u>positive</u> straight leg
5   raise test, Dr. Schwarz opined that the plaintiff could return to her usual work
6   activities. AR 328, 335. However in 2003, after <u>negative</u> Phalen's and straight leg
7   raise tests, Dr. Schwarz somehow concluded– with even less medical evidence of
8   disability than in 2001– that plaintiff was precluded from performing heavy work
9   activities and prolonged sitting, standing, and walking. AR 564. Since Dr.
10  Schwarz' conclusions are internally inconsistent with his findings, and because
11  some of his opinions were not based on objective medical evidence, the ALJ cited
12  a specific and legitimate reason for rejecting Dr. Schwarz' testimony.

13        Plaintiff argues in his reply that the ALJ had an affirmative duty to contact
14  Dr. Schwarz to obtain an "explanation" of his opinions. This argument is without
15  merit, a lack of cited authority on this point notwithstanding, because the primary
16  duty the ALJ has in this regard is to create a full and fair record. Thus, if there was
17  any ambiguity, it would have been the responsibility of the ALJ to further develop
18  the record so as to make an informed decision. However, in the present case we are
19  dealing with inconsistencies, not ambiguities. The ALJ had no duty to investigate
20  further.

21        Thus, it is the finding of this court that the inconsistencies between the
22  opinions of Drs. Gurvey and Berman versus the opinion of Dr. Schwarz, and the
23  internal inconsistencies in the report of Dr. Schwarz constitute legally sufficient
24  reasons for rejecting the opinion of Dr. Schwarz.
25  ///
26  ///
27  ///
28  <u>Issue 2</u>:

The second issue raised is whether or not the ALJ properly evaluated the plaintiff's subjective complaints. Plaintiff argues that the reasons given by the ALJ for rejecting plaintiff's testimony do not satisfy the legal standard required.

Once a claimant establishes an underlying medical impairment which could reasonably be expected to produce some subjective symptoms, an ALJ must provide specific, clear and convincing reasons to reject allegations of subjectively disabling symptoms. Thomas v. Barnhart, 278 F.3d 947, 959-60 (9th Cir. 2002). An ALJ's credibility findings are entitled to deference if they are supported by substantial evidence and are sufficiently specific to allow a reviewing court to conclude the adjudicator rejected claimant's testimony on permissible grounds and did not arbitrarily discredit it. Bunnell v. Sullivan, 927 F.2d 341, 345-46 (9th Cir. 1991) (en banc).

An ALJ may consider various factors in assessing the credibility of alleged disabling subjective symptoms. Id. at 346-47. These factors include: "the duration and frequency" of any pain; "type, dosage, and effectiveness" of any medication; "treatment, other than medication;" "functional restrictions;" "the claimant's daily activities;" "unexplained failure to seek treatment or follow a prescribed course of treatment;" and "ordinary techniques of credibility evaluation." Id.; see 20 C.F.R. §§ 404.1529, 416.929 (2006).

In the case at bar, plaintiff does have underlying medical impairments which could reasonably be expected to produce some subjective symptoms, namely: pain. AR 25. The plaintiff's medical impairments, according to the findings of the ALJ, are her lumbar spine sprain/strain and cubital tunnel syndrome of the upper right extremity. AR 25. Thus, if the ALJ chose to reject the plaintiff's testimony of disabling pain as a result of her impairments, he must have cited clear and convincing reasons to do so.

However, the ALJ in this case did not reject the plaintiff's testimony outright, but instead found the plaintiff's testimony to be partially credible, and

actually afforded the plaintiff's testimony considerable weight, and changed his RFC to reflect that. AR 23, 25. Since the ALJ only found the plaintiff's testimony partially credible, he must therefore have cited substantial evidence of clear and convincing reasons in order to reject the plaintiff's testimony regarding the totally disabling nature of her ailments.

Before we can answer whether or not the ALJ's reasons for rejecting the plaintiff's claims were sufficient, we must first determine which of the plaintiff's claims were rejected. Thus, prior to delving into specific reasons, we must first note just how much weight the ALJ actually afforded the plaintiff's claims in formulating the plaintiff's RFC. Through her testimony, the plaintiff claimed that she was able to lift "no more than 10 lbs," presumably with some frequency, would sit for between 20 and 30 minutes before having to change position–although noting she sometimes can sit through a 90 minute religious service, and also mentioned she occasionally attends movies, can stand for between 15 and 30 minutes before having to change position, and can still complete housework by spreading it out over a couple of days. AR 660-61, 663, 687.

The ALJ's RFC concluded that the plaintiff could lift 20 lbs occasionally, 10 lbs frequently, stand/walk 4 hours and sit 4 hours in an 8 hour day, that the plaintiff should alternate sitting and standing every 30 minutes, that she was able to occasionally climb, balance, kneel, stoop, crouch, and crawl, and was able to handle and finger frequently with the right extremity. AR 23.

Given that the medical evidence the ALJ considered in formulating this RFC– that of Drs. Gurvey and Berman– established limitations of lifting 50 lbs occasionally, 25 lbs frequently, standing and walking for 6 of 8 hours with no limitations on pushing and pulling, occasionally climbing and crawling, and no manipulative restrictions on the right extremity– the ALJ clearly gave considerable weight to the testimony of the plaintiff in formulating her RFC. AR 21. Hence, the question becomes, did the ALJ cite substantial evidence of clear and convincing

- 7 -

1 reasons for assigning only partial– albeit substantial– credibility to the plaintiff's
2 complaints?

3 In his decision, the ALJ cites a number of different reasons which led to his
4 assessment of only partial credibility. AR 23. The first factor the ALJ cited was
5 that the plaintiff's subjective complaints of pain were inconsistent with the
6 objective medical evidence of record. AR 21-23. Although this may not be the sole
7 basis for rejecting credibility, inconsistencies between a claimant's allegations and
8 the objective medical evidence of record can play a role in determining credibility.
9 See Light v. Chater, 119 F.3d 789, 792 (9th Cir. 1997); Morgan, 169 F.3d at 600.

10 The ALJ specifically noted that no doctor diagnosed the plaintiff at any
11 point with siginificant degenerative disc disease, and noted further that Dr. Gurvey
12 testified that a 2mm bulge (as in the plaintiff) is minimal, and completely normal
13 for a person of the plaintiff's age. AR 22.

14 The ALJ also recounted the medical evidence which repeatedly showed no
15 stenosis, no nerve impingement, no neurological deficits, no weakness, several
16 negative straight leg raisings, normal gait, and no atrophy– all of which were in
17 direct conflict with the plaintiff's complaints of disabling back pain. AR 22.

18 As to the right extremity pain, the ALJ noted that Dr. Berman, Dr. Gurvey,
19 and at least one of the plaintiff's own physicians agreed that she does not have
20 carpal tunnel syndrome. AR 22-23. Indeed, Drs. Berman and Gurvey opined that
21 the plaintiff would have no right arm impairment whatsoever. AR 23.

22 The second reason the ALJ cited to explain his assessment of only partial
23 credibility to the pain complaints of the plaintiff, was that the plaintiff had received
24 mostly conservative treatment for her injuries. AR 23. With the exception of the
25 IDET procedure– which the medical expert testified was wholly unnecessary– the
26 plaintiff received only pain medication, epidurals, and some brief physical therapy
27 for her injuries. AR 23. As the ALJ noted in the following sentence, this
28 conservative care was consistent with intermittent pain and less serious injuries; as

1    Dr. Gurvey pointed out previously: more serious injuries warrant surgery after
2    conservative care fails. AR 21, 23, 628, 630. The ALJ's observation of mostly
3    conservative care, and the plaintiff's own admission of intermittent pain, both
4    support a finding of only partial credibility with respect to the debilitating nature of
5    the plaintiff's pain.
6        The final reason the ALJ cited for assigning only partial credibility to the
7    plaintiff's subjective complaints was that her "fairly active lifestyle" was
8    inconsistent with her claim of total disability. AR 23. On the one hand, the
9    claimant's daily activities are among the listed factors which may be considered in
10   assessing credibility. See 20 C.F.R. § 404.1529(a) (2006). As plaintiff points out
11   however, "a claimant does not have to be a basketcase [sic] or vegetate in a dark
12   room to qualify for benefits." Stated dispassionately, the Court should not punish
13   the claimant for trying to lead a normal life. Cooper v. Bowen, 815 F.2d 557, 561
14   (9th Cir. 1987). The case law essentially boils down to a single question when
15   considering the claimant's daily activities: are the daily activities indicative of the
16   fact that the claimant is capable of working in a particular capacity? See Smith v.
17   Califano, 637 F.2d 968, 972 (3rd Cir. 1981).
18       Based on her own testimony the plaintiff claims that she drives, shops, goes
19   out to dinner, goes to church, occasionally sees movies, cooks, cleans, does
20   laundry, and can care for her personal hygiene. AR 23, 663. As the ALJ noted,
21   being able to partake in these activities on a daily basis is not indicative of total
22   disability. AR 23. Furthermore, these activities require a significant amount of
23   physical involvement, more so than the positions of cashier, counter clerk, and
24   surveillance systems monitor as described by the vocational expert. AR 710-12. As
25   such, information regarding the claimant's daily activities was properly considered
26   because it provided information relevant to her ability to sustain work.
27       Thus, it is the finding of this court that the conservative treatment the
28   plaintiff received for her ailments, and her fairly active lifestyle, were properly

1 considered by the ALJ as clear and convincing reasons for finding the plaintiff's
2 testimony only partially credible. It is also the finding of this court that the fact that
3 the plaintiff's complaints were inconsistent with medical evidence was properly
4 considered by the ALJ as support for the aforementioned reasons.

## IV. ORDER

For the foregoing reasons, the decision of the Commissioner is affirmed and plaintiff's complaint is dismissed.

Date: June 20, 2007

_____/s/_____

STEPHEN J. HILLMAN

UNITED STATES MAGISTRATE JUDGE